298 F.2d 360
 In the Matter of GENERAL STORES CORPORATION, Debtor.
Lewis J. RUSKIN, as Trustee Under Collateral Agreement Dated
May 19, 1954, Appellant,
v.
Charles H. GRIFFITHS, Trustee in Reorganization of General
Stores Corporation, Debtor, Appellee.
 No. 54, Docket 27017.
 United States Court of Appeals Second Circuit.
 Argued Nov. 14, 1961.
Decided Jan. 9, 1962.
 
 Harry H. Ruskin, Chicago, Ill., for appellant.
 Martin Drazen, White Plains, N.Y. (Frederick P. Close, white Plaints, N.Y., on the brief), for appellee.
 Richard V. Bandler, Special Counsel, Securities and Exchange Commission, New York, N.Y. (Kiva Berke, Atty., SEC, New York City, Peter A. Dammann, Gen. Counsel and David Ferber, Asst. Gen. Counsel, SEC, Washington, D.C., on the brief), for the Securities and Exchange Commission.
 Before SWAN, MOORE and SMITH, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge.
 
 
 1
 This is an appeal from a denial in part of an application in a Chapter X proceeding for a supplemental allowance to Lewis J. Ruskin, as trustee under a Collateral Agreement for services rendered by his attorneys and for disbursements.
 
 
 2
 In May, 1954 the Debtor purchased from Ruskin, his wife and Rexall Drug Co. all the stock of Ford Hopkins Company, a Charcago retail drug chain. An unpaid balance of the purchase price was secured by a collateral trust agreement under which was pledged the stock of Ford Hopkins and that of another drug chain owned by the Debtor. The collateral trust agreement gave the trustee a prior lien for reasonable compensation for all services rendered in the execution of the trust and for reasonable compensation for his attorneys and counsel in connection therewith. In 1954 the Debtor filed a petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. 701 et seq. In August 1955 Ruskin accelerated the principal and in April 1956 gave notice of foreclosure of the collateral. On April 25, 1956 the Debtor filed an amended petition under Chapter X of the Bankruptcy Act, 11 U.S.C.A. 501 et seq. Ruskin resisted proposed plans which would provide immediate payment of only part of the secured indebtedness, and eventually a plan was approved March 19, 1958 which provided for payment in full cash of the secured indebtedness. On petition by Ruskin the District Court handed down an opinion, 164 F.Supp. 130, 138, and entered an order on June 12, 1958 fixing Ruskin's lien for principal, interest, compensation and expenses including attorney's fees, reserving jurisdiction to fix compensation and expenses including reasonable attorney's fees incurred subsequent to those covered in the order. Ruskin appealed, and this court reversed as to interest, increasing the rate after acceleration from 4% allowed by the District Court to 6% as provided in the Collateral Agreement, an in increase in the amount of approximately $120,000. We affirmed as to the lien for Ruskin's compensation, expenses and legal fees. 269 F.2d 827. Ruskin and the Reorganization trustee each petitioned the Supreme Court for writ of certiorari. Both petitions were denied January 25, 1960. Ruskin then filed a petition to fix his lien on substituted collateral for expenses and legal fees, including those incurred in connection with his Petition for Writ of Certiorari. The District Court, Richard H. Levet, J., granted the petition in part, but denied any allowance for legal fees and expenses in connection with Ruskin's Petition for Certiorari, giving the following reasons:
 
 
 3
 (a) The petition was not based on any reasonable legal probability of success.
 
 
 4
 (b) It was not necessary.
 
 
 5
 (c) It contributed nothing to the execution of the Trust.
 
 
 6
 (d) The cross-writ was interposed for apparently specious reasons: (quoting from the attorney's affidavit and the minutes of the hearing).
 
 
 7
 The allowance of legal fees and expenses 'to the end of this proceeding' is challenged insofar as it may serve to cut off Ruskin's rights to compensation for reasonable attorney's fees subsequent to June 9, 1960. The parties concede, and we agree, that this was not intended by the District Court to cut off Ruskin's rights in the future but merely to terminate his right to allowance for services rendered to the end of the 'proceeding' then before the court.
 
 
 8
 We agree with the result reached by Judge Levet on the fees in connection with the petition for certiorari. While Ruskin was entitled in the execution of the trust to seek and obtain from the collateral reasonably incurred attorney's fees and expenses, the petition for certiorari to review the allowances, attorney's fees and expenses had so little prospect of success that the finding to that effect must be sustained.
 
 
 9
 Ruskin claims that he was justified in seeking review by the Supreme Court by virtue of an allegedly substantial question existing with respect ot the weight to be given the recommendations of the Securities and Exchange, Commission, as to which there is a conflict among the circuits.
 
 
 10
 However intellectually stimulating such a question may be, the chances of success in the instant case were indeed remote. Even if Ruskin successfully persuaded the Supreme Court to grant his cross petition for certiorari, and thereafter to reverse a unanimous decision of the Court of Appeals affirming, in pertinent part, a decision of the District Court with respect to reasonable counsel fees, he would have won only the right to another attempt to persuade the District Court as to the proper allowances; for as appellant takes care to point out he was not seeking review of the allowance as such, a question addressed to the sound discretion of the District Court, but of the proper role of the Securities and Exchange Commission in the proceedings.
 
 
 11
 Even a cursory reading of the opinions in connection with the $180,000 claim for legal fees could not fail to disclose that a very substantial portion of the claim would have been disallowed upon a subsequent hearing. The conclusions of the District Court which were affirmed by this court, Ruskin v. Griffiths, 269 F.2d 827, 834 (2 Cir., 1959), affirming sub. nom., In re General Stores Corp., 164 F.Supp. 130, 142 (S.D.N.Y.1958), were:
 
 
 12
 '* * * duplication of services; that certain of the services which were rendered did not require legal action or advice of counsel; that the issues dealt with by counsel were not complex; that approximately half of the recorded time spent by the New York firm was contributed by a junior associate; that during the period for which compensation was being sought for them by the collateral trustee, the Chicago firm was receiving an annual retainer of $15,000 from Ford Hopkins.'
 
 
 13
 Even without the SEC recommendations, any substantial addition to the allowances made was highly unlikely.
 
 
 14
 In determining whether legal fees and expenses were 'reasonably incurred.' Collateral Agreement of May 19, 1954, Article VIII, Section 1(3), it is necessary to consider the cost of pursuing a given course of action in the light of the probability of success and the ultimate benefit which may be reasonably anticipated. In the instant case we think it clear that the possibility of inducing the Supreme Court to hear this case was itself remote.[1] Moreover, since it was most unlikely that another round of litigation would result in a substantial increase in the allowances, the expenditures were unreasonable and unnecessary.
 
 
 15
 The order denying an additional allowance for services and expenses on the collateral trustee's application for certiorari is affirmed.
 
 
 
 [1]
 The attitude of the Supreme Court has not been sympathetic to the 'unseemly parade to the appellate courts' for the sole purpose of increasing attorney's fees, which results in a spiraling of costs to the debtor. Dickinson Industrial Site v. Cowan, 309 U.S. 382, 387, 389, 60 S.Ct. 595, 84 L.Ed. 819